**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOMINGO COLON MONTANEZ,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 4:04-02569** |
| **v.** | : | **(MCCLURE, D.J.)** |
| | | **(MANNION, M.J.)** |
| **JEFFREY A. BEARD, Ph.D.,** | : | |
| **Secretary & Commissioner of** | | |
| **the Pennsylvania Department of** | : | |
| **Corrections,** | | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

Before the court is the defendant's motion to dismiss the plaintiff's complaint.  (Doc. No. 29.)

## I.   Procedural History

Plaintiff Domingo Colon Montanez, an inmate at the State Correctional Institution at Fayette, LaBelle, Pennsylvania ("SCI-Fayette"), commenced this civil rights action pursuant to 42 U.S.C. §1983 on November 29, 2004, by filing what he styles a "preliminary complaint class action lawsuit" against the defendant Secretary of the Department of Corrections ("DOC").  (Doc. No. 1.) The plaintiff challenges the constitutionality of the DOC's policy, DC-ADM 005, "Collection of Inmate Debts," issued pursuant to 42 PA. CONS. STAT. §9728(b)(5) (commonly, and hereinafter, referred to as "Act 84"), by alleging that the policy deprives him of a property interest and due process in violation of the Fifth and Fourteenth Amendments.  (Doc. No. 1.)

Attached to the complaint is a copy of an order from the United States District Court, Eastern District of Pennsylvania, denying the plaintiff's motion to proceed in forma pauperis without prejudice to reasserting the action in the appropriate district court.  (Doc. No. 1, Civil Action No. 04-5133.)  The district

court noted that the plaintiff failed to allege that any events underlying his complaint occurred in the Eastern District and the defendant does not reside in the Eastern District.  (Doc. No. 1, Civil Action No. 04-5133.)

Also attached to the complaint is the plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and a certified copy of his inmate account issued by the prison.  (Doc. No. 1.)  The plaintiff subsequently filed an <u>in</u> <u>forma</u> <u>pauperis</u> authorization form on December 2, 2004, in case it was required by the Clerk of Court.  (Doc. No. 4.)  On December 15, 2005, the plaintiff received an administrative order directing him to pay the filing fee or file an application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> within thirty days, or his case would be dismissed. (Doc. No. 7.)  The plaintiff filed the application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> on December 27, 2004.  (Doc. No. 8.)

On December 30, 2004, the court issued a financial administrative order.  (Doc. No. 9.)  The plaintiff, on January 10, 2005, submitted another <u>in</u> <u>forma</u> <u>pauperis</u> authorization and certified copy of his inmate account.  (Doc. No. 11.)

On January 10, 2005, the plaintiff moved for "declaration for entry of default."  (Doc. No. 12.)  On January 21, 2005, the plaintiff filed an "order to show cause for a preliminary injunction, with affidavit attached."  (Doc. No. 14.)  The court denied the motion for default judgment on March 3, 2005, because the defendant had not yet been served; in the same order, the court ordered that process shall issue. (Doc. No. 18.)  The plaintiff moved a second time for entry of default on April 6, 2005 (Doc. No. 20), which the court again denied on April 18, 2005 (Doc. No. 24).

On April 13, 2005, the defendant waived service of summons.  (Doc. No. 23.)  His answer was due on May 3, 2005, but on May 3, 2005, the defendant moved for an extension of time to respond to the complaint.  (Doc. No.  25.) The court granted the extension, and the answer was due on May 17, 2005.

(Doc. No. 26.)  The defendant moved again for an extension of time on May 17, 2005, (Doc. No. 27) which the court granted on May 18, 2005 (Doc. No. 28).  The answer was then due on May 20, 2005.  Instead of answering, the defendant moved to dismiss the complaint on May 20, 2005,  (Doc. No. 29) and filed his brief in support of the motion on June 6, 2005 (Doc. No. 30).

The plaintiff on June 27, 2005, filed "plaintiffs' motion for enlargement of time until injunctive relief is granted," seeking an extension of twenty days subsequent to the court's issuing a preliminary injunction enjoining Department of Corrections personnel from hindering his legal research in which to file his brief in opposition to the defendant's motion to dismiss.  (Doc. No. 31.)  On June 29, 2005, the court denied the motion in part and granted the motion in part: The extension of time subsequent to the issuance of injunctive relief was denied, but the plaintiff was granted an extension of twenty days from the order, or until July 18, 2005, to file his brief in opposition to the defendant's motion to dismiss.  (Doc. No. 32.)  The plaintiff filed his brief in opposition to the defendant's motion to dismiss on July 21, 2005.  (Doc. No. 34.)

On August 3, 2005, the plaintiff moved for class certification to represent all prisoners from whom the Department of Corrections had collected Act 84 assessments.  (Doc. No. 35.)  The court denied the motion on August 19, 2005, because the plaintiff as a pro se prisoner would not "fairly and adequately represent the interests of the class."  (Doc. No. 36 (citing Fed.R.Civ.P. 23(a)(4)).)   The plaintiff appealed the order denying class certification to the district court.  (Doc. No. 37.)

The plaintiff moved on September 7, 2005, for leave to file a supplemental complaint. (Doc. No. 38.) On October 4, 2005, the court issued an order deeming the plaintiff's motion withdrawn because of the plaintiff's failure to file a supplemental brief.  (Doc. No. 41.)

3

On November 2, 2005, the plaintiff filed a "motion for speedy disposition, affidavit for a preliminary injunction" seeking a resolution to the motion filed on January 21, 2005.  (Doc. No. 42; see Doc. No. 14.)

On December 2, 2005, the plaintiff filed a "request for complete discovery" and interrogatories for the defendant.  (Doc. Nos. 43 & 44.)  The court struck the documents from the record because, pursuant to Local Rule 5.4, discovery materials shall not be filed with the court except as authorized. (Doc. No. 45.)

The plaintiff on January 30, 2006, filed a "motion for order" requesting a case management order.  (Doc. No. 50.)  The court on January 31, 2006, ordered that the motion be held in abeyance pending the issuance of its Report and Recommendation on the instant motion to dismiss.  (Doc. No. 51.)

On February 7, 2006, the plaintiff filed documents to be included in the record that substantiate or underlie his complaint.  (Doc. No. 53.)  The documents include DC-ADM 005, DOC memorandums related to the implementation of DC-ADM 005 in state correctional facilities, the plaintiff's sentence order, documents related to the plaintiff's sentencing and challenges to the Act 84 assessments in state courts, and excerpts from the plaintiff's "Inmate Handbook."  (Doc. No. 53.)

## II.  Standard of Review

The defendant's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6).  This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can granted.  Dismissal should only occur where it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Accordingly, dismissal is appropriate "only if, after accepting as true all of the facts alleged in the

complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Trump Hotel and Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998) (citing ALA, Inc. v. CCair, Inc., 29 F.3d 855, 859 (3d Cir. 1994)).

In deciding a motion to dismiss, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents that plaintiff has identified as the basis of his claim. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

When considering a motion to dismiss under Rule 12(b)(6), the important inquiry is not whether the plaintiff will ultimately prevail on the merits of his claim, but only whether he is entitled to offer evidence in support of them. Scheuer v. Rhodes, 416 U.S. 233, 236 (1974).

## III.   Discussion

The plaintiff argues that the defendant is liable in both his official and individual capacities for violating his constitutional rights because the defendant "has issue[d]" DC-ADM 005 pursuant to Act 84. The plaintiff's theory of liability is premised on the following facts submitted by the plaintiff, which the court must accept as true for purposes of considering the motion to dismiss: On January 7, 2000, the plaintiff was sentenced to imprisonment for a period of five and one-half to twenty years in a state correctional facility. (Doc. Nos. 1 & 53.) The sentence order also provided that the plaintiff pay the costs of prosecution, which were assessed at $1,335.46, a $100 fine, and restitution of $148.60. (Doc. Nos. 1 & 53.) The plaintiff was informed of his sentence, including the financial assessments, at his sentencing. (Doc. No. 53.) In addition, he received at some subsequent point an "Inmate

Handbook," which explains DC-ADM 005.  (Doc. No. 53.)

Pursuant to DC-ADM 005 implementing Act 84, the DOC deducted twenty percent from deposits to the plaintiff's inmate account.  (Doc. No. 1.) Act 84, titled "Collection of restitution, reparation, fees, costs, fines and penalties" and enacted in 1998, authorizes the DOC "to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation."   42 PA. CONS. STAT. §9728(b)(5) (2005).   DC-ADM 005, which was issued by the defendant, implements Act 84 by providing the procedure by which the DOC deducts the Act 84 assessments from inmate accounts.  Collection of Inmate Debts, Pa. Dep't of Corr., Policy No. DC-ADM 005 (issued Mar. 8, 2004, effective Apr. 7, 2004).   DC-ADM 005 provides for the deduction of twenty percent of an "inmate's account balance and monthly income" so long as the inmate's balance exceeds $10.00.  Id.

The plaintiff filed a grievance with the proper authorities at SCI-Layette claiming that the Act 84 deductions were "illegal and unlawful."  (Doc. No. 1.) The initial review upheld the deductions and denied him any relief.  The plaintiff appealed the decision to final review, but each appeal upheld the initial finding that the deductions were authorized by law and accorded with DOC policy.  (Doc. No. 1.)

The plaintiff claims that Act 84 and DC-ADM 005 violate his constitutional rights by depriving him of an interest in property without due process of the law in violation of the Fifth and Fourteenth Amendments.  He argues that he is entitled to a pre-deprivation hearing, at which he could show the hardship upon himself and his family and friends who financially support him in prison so as to avoid the Act 84 assessments against him. Furthermore, the statute and policy violate his constitutional right to equal protection under the law.  (Doc. No. 1.)

6

The plaintiff seeks a preliminary injunction and a temporary restraining order to prevent the defendant and the DOC from making any further Act 84 assessments.  He seeks compensatory and punitive "damages in an amount in excess of $1,000,000.00" for the deprivation of his constitutional rights, restitution of the amounts already deducted from his inmate account, and reimbursement of litigations costs.   Further, the plaintiff seeks an injunction enjoining DOC personnel from in any way retaliating against him because of the lawsuit, or in the alternative, an order transferring him to a federal correctional facility.  Finally, the plaintiff seeks an order allowing him access to more than ten law books at any time, which would allow the plaintiff to exceed a DOC policy that allegedly violates the plaintiff's constitutional rights under the First Amendment.  (Doc. No. 1.)

The defendant raises three grounds for dismissal:  First, the defendant argues that the plaintiff fails to state a claim for which relief can be granted because Act 84 and DC-ADM 005 do not violate his constitutional rights to procedural due process or equal protection.  Second, the defendant argues that he is immune from suit in his official capacity under the Eleventh Amendment.   Finally, the defendant argues that he is not liable in his individual capacity because the plaintiff has failed to allege that the defendant was personally involved in the events underlying the plaintiff's claim.  (Doc. No. 30.)  The motion to dismiss the plaintiff's complaint against the defendant should be granted on all three grounds.

### A.    Failure to State a Claim

### 1.    Procedural Due Process

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV, § 1.  "The touchstone of due process is protection of the individual against arbitrary action of government."  Wolff v. McDonnell, 418

U.S. 539, 558 (1974) (citing <u>Dent v. West Virginia</u>, 129 U.S. 114, 123 (1889)). This means that a state can deprive a person of his life, liberty, or property only so long as the deprivation is justified by a procedure appropriate to the nature of the deprivation.  <u>Carey v. Piphus</u>, 435 U.S. 247, 259 (1978).

There are three requirements directly in the Fourteenth Amendment that are necessary to establish a procedural due process violation.  <u>Parratt v. Taylor</u>, 451 U.S. 527, 536 (1981), <u>overruled on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).  First, the defendant must have acted under color of law at the time the alleged deprivation occurred.  <u>Id.</u>  Second, the plaintiff must show the existence of a protected interest in life, liberty, or property that has been interfered with by the state-defendant.  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 571 (1972); <u>Goldberg v. Kelly</u>, 397 U.S. 254 (1970).  Third, the plaintiff must then show that the procedures attendant upon that deprivation were constitutionally insufficient.  <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983), <u>overruled on other grounds by</u> <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).

The third showing requires the court to balance three competing interests: the private interest affected by the deprivation; the risk of error in the challenged deprivation procedures, and whether any additional or substitute procedures would decrease that risk; and, the government's interest in maintaining the challenged procedures to avoid increased financial and administrative burdens entailed in any additional or substitute procedures.  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976)); <u>see also</u> <u>Tillman</u>, 221 F.3d at 421.  Under the test that the Supreme Court articulated in <u>Mathews v. Eldridge</u>, one is usually entitled to notice and "some kind of hearing <u>before</u>" the deprivation."  <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (1990) (emphasis in original); <u>Parratt</u>, 451 U.S. at 537-38.

However, there are occasions where a predeprivation hearing may be

8

replaced by a postdeprivation process.  If a state must act quickly or a predeprivation hearing would be impractical, then a postdeprivation process satisfies procedural due process as long as it provides "some meaningful means" of assessing the propriety of the deprivation.  Parratt, 451 U.S. at 539; Zinermon, 494 U.S. at 128.  A predeprivation process may be impractical where the deprivation is not a serious loss to the deprived person, the procedures by which the person is deprived "are sufficiently reliable to minimize the risk of erroneous determination," or the burden upon the government would be too great.  Zinermon, 494 U.S. at 128-29; Parratt, 451 U.S. at 542-43; Mathews, 424 U.S. at 347-49.  In sum, due process is not violated when property rights are determined after the deprivation and not before.  Parratt, 451 U.S. at 540 (citing Phillips v. Comm'r, 283 U.S. 589, 596-97 (1931)).

The first two showings are clear in this case.  First, the defendant is the secretary of the DOC.  Pursuant to the authority granted to him by the Commonwealth in Act 84, he issued an official DOC policy, DC-ADM 005, which led to the assessments against the plaintiff's inmate account.  Second, the plaintiff's complaint concerns his inmate account.  "Inmates have a property interest in funds held in prison accounts.  Thus, inmates are entitled to due process with respect to any deprivation of this money."  Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997) (internal citations omitted); see also Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 421 (3d Cir. 2000).

Third, Act 84 and DC-ADM 005 pass constitutional scrutiny because, in considering the facts of this case in light of the balancing test, the plaintiff is accorded due process.  The plaintiff may well be burdened by the Act 84 deductions from his inmate account, but the burden is not so great as to outweigh the competing interests.  The deductions are limited to no more than twenty percent of the plaintiff's funds and may never be assessed when the

9

plaintiff has less than $10.00.  Also, the plaintiff had prior notice of the Act 84 assessments.

Moreover, erroneous deductions are unlikely because the deductions are routine and ministerial.  Cf. Tillman, 221 F.3d at 422 ("The assessments and takings pursuant to the program involve routine matters of accounting, with a low risk of error.").  Thus, additional or substitute procedures, such as a predeprivation hearing, would be of little benefit, but would increase the Commonwealth's financial and administrative burdens.

Finally, the Commonwealth would be increasingly burdened if it were required to provide a predeprivation process.  Every inmate under the DOC's supervision is potentially subject to Act 84 assessments, and every inmate would have an interest in using a predeprivation process to protect his inmate account, as well as to burden and harass the DOC.  On the other hand, the DOC would have to devote greater staff and other resources to responding to the inmates' predeprivation processes.  Cf. Tillman, 221 F.3d at 422 ("[T]o require predeprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program, which is to reduce the county's costs of incarcerating prisoners.").

The competing interests favor the Commonwealth's procedure under Act 84.  A predeprivation process is impractical, and the postdeprivation process–the grievance procedure, which the plaintiff undertook, albeit unsuccessfully–is sufficient under the circumstances to satisfy procedural due process.  Cf. Tillman, 221 F.3d at 422 ("The grievance program allowed prisoners to complain about 'any' matter that is 'unjust.' . . .  In sum, the plaintiff had an adequate postdeprivation remedy in the grievance program.").  Consequently, the defendant's motion to dismiss the plaintiff's complaint should be granted on this ground.

10

### 2.   Equal Protection

The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws," U.S. CONST. amend. XIV § 1, "which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). Unless a statute implicates a suspect or quasi-suspect classification by distinguishing between people on the basis of race, alienage, national origin, or gender, it is "presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Id. at 440-42.

Neither the plaintiff nor the defendant have addressed the rationale underlying Act 84, but the court may consider any legitimate purpose in its equal protection analysis regardless of whether the state promulgated the challenged legislation primarily because of that purpose or even considered that purpose at all. Tillman, 221 F.3d at 423; Malmed v. Thornburgh, 621 F.2d 565, 569 (citing Flemming v. Nestor, 363 U.S. 603, 612 (1960); Weinberger v. Salfi, 422 U.S. 749, 780 (1975); McGinnis v. Royster, 410 U.S. 263, 276 (1973)).  A "conceivable purpose [of Act 84] is to reimburse the state for the expense of incarceration." Tillman, 221 F.3d at 423 (analyzing a county regulation similar to Act 84).  The state has a legitimate interest in recouping its expenses in prosecuting and incarcerating its criminals, and Act 84 is a rational means of recouping those expenses. See id.  Consequently, Act 84 withstands the plaintiff's Equal Protection challenge, and the defendant's motion to dismiss the plaintiff's complaint should be granted on this ground.

### B.   Eleventh Amendment Immunity

Federal courts cannot consider suits by private parties against states

and their agencies unless the state has consented to the filing of such a suit. Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241 (1985); Edelman v. Jordan, 415 U.S. 651, 662 (1974).  This immunity extends to suits asserting civil rights violations where the state is named as a defendant.  Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir.1981).  "Under the Eleventh Amendment, a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power."  Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223, 226 (3d Cir.2000).  The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment.  "By statute Pennsylvania has specifically withheld consent [to be sued]."  Laskaris, 661 F.2d at 25 (citing PA. CONS. STAT. ANN. § 8521(b)).  Section 1983 does not "abrogate the Eleventh Amendment immunity of the States."  Quern v. Jordan, 440 U.S. 332, 345 (1979).

Furthermore, an essential element of any claim under § 1983 is that the alleged wrongdoing was committed by a "person."  42 U.S.C. § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

Consequently, the defendant's motion to dismiss the plaintiff's complaint should be granted on this ground with respect to the plaintiff's claim against the defendant in his official capacity.  The defendant issued DC-ADM 005 in his role as secretary of the DOC.  Thus, he was acting as an agent of the state and does not constitute a person for purposes of litigation under § 1983.

## C.   Lack of Personal Involvement

To state a claim under §1983, the plaintiff must show that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. §1983; Morse v. Lower

Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997); Maine v. Thiboutot, 448 U.S. 1 (1980).  Liability under §1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (citing Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Moreover, relief cannot be granted against a defendant pursuant to §1983 based solely on the theory of respondeat superior or the fact that the defendant was the supervisor or superior of the person whose conduct actually deprived the plaintiff of one of his federally protected rights under color of state law.  Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976); Goode v. Rizzo,506 F.2d 542, 550 (3d Cir. 1974), rev'd on other grounds, Rizzo v. Goode, 423 U.S. 362 (1976).

Consequently, the defendant's motion to dismiss the plaintiff's complaint should be granted on this ground with respect to the plaintiff's claim against the defendant in his individual capacity because the defendant lacked personal involvement in the alleged deprivation of the plaintiff's constitutional rights.  The plaintiff's theory of the defendant's liability is predicated on respondeat superior.  The defendant merely issued a policy in accordance with state law.  He issued DC-ADM 005 to implement Act 84 with respect to all inmates in all state correctional facilities, not to deprive the plaintiff of any constitutional right.  Moreover, the defendant did not make any of the deductions from the plaintiff's inmate account pursuant to the policy.

## IV.     Conclusion

On the basis of the foregoing, **IT IS RECOMMENDED THAT:** defendant Beard's motion to dismiss the plaintiff's complaint (Doc. No. 29) be **GRANTED**.


S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date: February 14, 2006**
O:\shared\REPORTS\2004 Reports\04-2569.01.wpd

14