**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOMINGO COLON MONTANEZ**<br>**and TIMOTHY A. HALE,** | : | |
| | : | |
| **Plaintiffs** | | **CIVIL ACTION NO. 4:04-02569** |
| | : | |
| **v.** | | **(CAPUTO, D.J.)[1]** |
| | : | **(MANNION, M.J.)** |
| **JEFFREY A. BEARD, Ph.D.,** | : | |
| **Secretary & Commissioner of** | | |
| **the Pennsylvania Department of** | : | |
| **Corrections, SCI-ROCKVIEW** | | |
| **INMATE ACCOUNTING OFFICE,** | : | |
| **SUPERINTENDENT F. J. TENNIS,** | : | |
| **FRANCIS M. DOUGHERTY, EARL** | | |
| **E. WALKER, RAYMOND CINGEL,** | : | |
| **and PENNSYLVANIA DOC,** | | |
| | : | |
| **Defendants** | | |
| | : | |

## REPORT AND RECOMMENDATION

Pending before the court are the following: (1) the defendants' motion for summary judgment, (Doc. No. 194); (2) plaintiff Hale's counseled motion for summary judgment, (Doc. No. 199), (3) plaintiff Montanez's counseled motion for summary judgment, (Doc. No. 200), and (4) plaintiff Montanez's *pro se* motion for injunctive relief, (Doc. No. 238).

## I.     PROCEDURAL BACKGROUND

By way of relevant background, on November 29, 2004, plaintiff

---

[1]The instant action was originally assigned to the Honorable James F. McClure, Jr. On December 27, 2010, the action was reassigned to the Honorable A. Richard Caputo by verbal order.

Montanez filed a civil rights complaint pursuant to 42 U.S.C. §1983 in the Middle District of Pennsylvania which was docketed to the above-captioned civil action number. In his complaint, plaintiff Montanez alleges that the withdrawal of monies from his inmate account pursuant to 42 Pa.C.S.A. §9728(b)(5), (hereinafter "Act 84"), and Pennsylvania Department of Corrections, (hereinafter "DOC"), policy DC-ADM 005, that was promulgated pursuant to Act 84, violates his procedural due process right to notice and an opportunity to be heard as required by the Fourteenth Amendment. (Doc. No. 1).

By report dated February 14, 2006, the undersigned recommended that plaintiff Montanez's complaint be dismissed finding, among other things, that he had adequate post-deprivation remedies, such that his complaint failed to state a claim upon which relief could be granted. (Doc. No. 54). After the undersigned issued the report, the United States Court of Appeals for the Third Circuit issued its decision in Hale v. Beard, 168 Fed.Appx.532 (3d Cir. 2006) (per curiam), in which claims similar to those of plaintiff Montanez were raised[2]. By order dated April 24, 2006, the district judge remanded the matter for further consideration in light of Hale. (Doc. No. 59).

Upon remand and the completion of supplemental briefing, the undersigned prepared a second report in which it was again recommended

---

[2]As later discussed, this appeal is related to an intervening civil rights action filed by plaintiff Hale in the Middle District of Pennsylvania.

that plaintiff Montanez's complaint be dismissed. In so recommending, the court found that Act 84 and DC-ADM 005 satisfied the minimum standards of due process according to the factors set forth by the Third Circuit in Hale. (Doc. No. 66). On July 12, 2006, the district judge adopted the report of the undersigned in full. (Doc. No. 70). On August 18, 2006, plaintiff Montanez filed an appeal with the Third Circuit.

In the meantime, on December 15, 2004, plaintiff Hale filed a civil rights complaint in the Middle District of Pennsylvania pursuant to §1983 in which he also alleged, among other things, violations of his procedural due process rights in relation to the withdrawal of monies from his inmate account pursuant to Act 84 and DC-ADM 005. See Hale v. Beard, et al., Civil Action No. 3:04-2704 (originally assigned to Munley, J.). (Doc. No. 1). Amended complaints were filed by plaintiff Hale on December 23, 2004, (Doc. No. 6), and January 27, 2005, (Doc. No. 13). By order dated February 8, 2005, plaintiff Hale's complaint was dismissed for his failure to state a claim. (Doc. No. 15). On June 15, 2005, plaintiff Hale file a notice of appeal with the Third Circuit. (Doc. No. 33). On February 27, 2006, the Third Circuit issued the Hale decision referenced above, which vacated the district court's order dismissing plaintiff Hale's case and remanded the matter for further proceedings. See Hale v. Beard, supra. (Doc. No. 51). On March 13, 2006, plaintiff Hale filed another amended complaint, (Doc. No. 46), to which the defendants responded with a motion to dismiss on March 23, 2006, (Doc. No. 52). By memorandum and order dated October 11, 2006, the court dismissed all of plaintiff Hale's

claims, with the exception of a claim for retaliation. (Doc. No. 75). The retaliation claim was resolved by way of a motion for summary judgment, which the court granted in favor of the defendants on July 31, 2007. (Doc. No. 115). Plaintiff Hale filed a notice of appeal with the Third Circuit on August 6, 2007. (Doc. No. 116).

While the above two actions were pending, on February 2, 2006, plaintiff Montanez filed another §1983 action in the Western District of Pennsylvania, which raised claims paralleling those raised in his initial action in the Middle District. See Montanez v. Oppman, et al., Civil Action No. 2:06-0161 (originally assigned to Conti, J.). (Doc. No. 6). By report dated November 8, 2006, it was recommended that plaintiff Montanez's claims be dismissed as frivolous and on collateral estoppel grounds because the claims raised in the Western District were nearly identical to those raised in his initial action in the Middle District. (Doc. No. 31). On December 20, 2006, the district judge adopted the report and dismissed plaintiff Montanez's action as frivolous. (Doc. No. 36). Plaintiff Montanez filed a notice of appeal with the Third Circuit on March 16, 2007. (Doc. No. 41).

The Third Circuit consolidated the above three appeals for consideration. On September 8, 2009, the Third Circuit issued an opinion vacating each of the district courts' dismissals of the plaintiffs' procedural due process claims and remanded the actions for further proceedings. See Montanez v. Beard, 344 Fed.Appx. 833 (3d Cir. 2009).

Upon remand and subsequent motion, the three matters were

4

consolidated within the above-captioned civil action number in the Middle District of Pennsylvania. Both plaintiffs are presently represented by counsel. The parties have filed motions for summary judgment, which are currently ripe for disposition. In addition, plaintiff Montanez has filed a *pro se* motion for injunctive relief.

## II.    LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences

5

drawn therefrom in the light most favorable to the non-moving party. <u>Andreoli v. Gates</u>, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." <u>In re Bressman</u>, 327 F.3d 229, 238 (3d Cir. 2003); <u>see also</u> <u>Celotex</u>, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." <u>Celotex Corp.</u>, 477 U.S. at 322-23; <u>Jakimas v. Hoffman-La Roche, Inc.</u>, 485 F.3d 770, 777 (3d Cir. 2007).

With regard to plaintiff Montanez's *pro se* motion for injunctive relief, a court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the

lawsuit's merits. <u>Bey v. Pennsylvania Bd. of Probation and Parole</u>, 2012 WL 1123893 (M.D.Pa.) (Caputo, J.) (citing <u>Acierno v. New Castle Cnty.</u>, 40 F.3d 645, 647 (3d Cir. 1994)). "A preliminary injunction is an extraordinary remedy that is never awarded as of right." <u>Id.</u> (quoting <u>Winter v. Natural Res. Def. Council</u>, 555 U.S. 7, 22, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008); <u>Kos Pharm., Inc. v. Andrx Corp.</u>, 369 F.3d 700, 708 (3d Cir. 2004)). The moving party bears the burden of establishing that the requested injunctive relief is warranted. <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 800 (3d Cir. 1989).

## III.   DISCUSSION[3]

As discussed by the Third Circuit in its decision remanding these matters, Act 84 amended two Pennsylvania statutes: 42 Pa.C.S. §§9728(b) and 8127(a). Section 8127(a) provides that "wages, salaries, and commissions" are exempt from attachment while in the hands of employers, but provides exceptions for certain situations, such as proceedings for support. Wages, salaries, and commissions may be attached in payment "[f]or restitution to crime victims, costs, fines, or bail judgments pursuant to an order entered by a court in a criminal proceeding." Section 9728 relates to the

---

[3]As indicated above, three separate motions for summary judgment have been filed by the parties. However, because the arguments contained therein so overlap, the court has not taken to address each motion individually, but has simply integrated the arguments raised in the motions. Based upon the discussion herein, recommendations have been made with respect to each of the motions.

collection of restitution, reparation, fees, costs, fines and penalties. Section 9728(b)(5) authorizes the DOC and county correctional facilities to make monetary deductions from inmate personal accounts for collecting restitution and other court-obligated costs.

Act 84 provides, in relevant part,

the county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation . . . The Department of Corrections shall develop guidelines relating to its responsibilities under this paragraph.

42 Pa.C.S. §9728(b)(5).

DC-ADM 005, Collection of Inmate Debts, is the administrative policy promulgated by the DOC in accordance with the directive of Act 84. This policy provides that, initially, 20% of the inmate's account balance will be deducted for payments of fines, costs, and restitution. Subsequently, 20% of the inmate's monthly income will be deducted. These deductions are provided that the inmate has a balance that exceeds $10.00. According to DC-ADM 005, income includes "[a]ll funds credited to an inmate's account regardless of source."

The plaintiffs in this case argue that DC-ADM 005, which allows for the deduction of 20% of the funds deposited into their inmate accounts for payment of court imposed fines, costs and restitution, violates their right to procedural due process in that they were not afforded adequate notice or an

opportunity to be heard prior to the deductions being taken[4].

In order to state a due process claim, the plaintiffs must establish "(1) that the state deprived [them] of a protected interest in life, liberty, or property and (2) the deprivation occurred without due process of law." Heim v. Dauphin County Prison, 2011 WL 3875998 (M.D.Pa.) (Caputo, J.) (citing Burns v. PA Dep't of Corr., 544 F.3d 279, 285 (3d Cir. 2008)). There is no dispute that monies were taken from the plaintiffs' inmate accounts to satisfy the amounts of fines, costs and restitution owed by each. It is well-established that inmates have a property interest in funds held in their inmate accounts. Id. (citing Burns, 544 F.3d at 286)). Therefore, the initial requirement of the plaintiffs' due process claim has been satisfied. However, "[i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. Id. (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

In considering the appeals of plaintiffs Montanez and Hale, the Third Circuit provided some guidance as to what issues should be resolved in determining whether the plaintiffs were afforded adequate procedural due process in relation to the deduction of monies from their inmate accounts pursuant to Act 84 and DC-ADM 005. In doing so, the court noted that

---

[4]The plaintiffs do not dispute that they owe the fines, restitution and costs, but only challenge the deduction of funds from their accounts in order to pay them.

procedural due process concerns invoke the balancing of the factors set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), which require the court to weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the value of additional or substitute procedural safeguards; and (3) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  As the plaintiffs' claims had been decided at the dismissal stage in the district courts, the Third Circuit found that it could not properly assess such factors on the record before it. Montanez, 344 Fed.Appx. at 836.

    With this in mind, the Third Circuit went on to discuss the findings of the district courts. While the district courts found that the plaintiffs' claims were foreclosed on the basis of the sentencing courts' explanation to the plaintiffs of what was to follow, the Third Circuit determined that, in light of the pronouncements in Higgins v. Beyer, 293 F.3d 683 (3d Cir. 2002)[5], and the

_____

    [5]In Higgins, an inmate brought a §1983 action claiming that prison officials violated his due process rights by taking money from his veteran's disability check to pay a court-ordered fine. In taking the money, prison officials were acting pursuant to a state statute which allowed for the collection of funds from an inmate's account. The state statute was found to be in conflict with federal law prohibiting the attachment of an inmate's veterans' disability checks under 38 U.S.C. §5301(a). The Court reasoned that under the Supremacy Clause the state law had been abrogated by the conflicting federal statute. Federal law similarly protects Social Security benefits at 42 U.S.C. §407(a). Bennett v. Arkansas, 485 U.S. 395 (1988). The Third Circuit allowed the plaintiff's due process claim to proceed stating that
(continued...)

limited information presented in the plaintiffs' cases, it could not be determined whether the current DOC policies, the existence of Act 84, and the respective sentencing hearings afforded the plaintiffs their procedural due process rights. Here, the court found that a general statement of financial obligations and notice of the state's ability to debit an unspecified amount from an inmate's account does not settle the legal question of whether violations of due process occurred, as it was not certain that the plaintiffs were afforded sufficient notice or opportunity to respond. The court stated that, although it was possible that a sentence could be imposed in such a manner that would be sufficient to satisfy a plaintiff's due process rights regarding future debits from his account, it was unable to conclude that notice was provided to either of the plaintiffs here which would be constitutionally adequate. Specifically, the court noted that in the materials provided from plaintiff Montanez's sentencing hearing, the sentencing court did not mention deductions of funds by the DOC during subsequent incarceration. Instead, the sentencing court "merely ordered that the defendant 'shall be subject to such conditions governing parole, including a plan for payment of costs and fines and restitution, as established by the Pennsylvania Board of Parole.'" The Third Circuit indicated that this statement by the sentencing court apparently

---

[5](...continued)
the alleged due process violation occurred at the moment that funds were actually deducted from the inmate's account, without notice and a pre-deprivation hearing. Higgins, 293 F.3d at 694. Here, it is not claimed by the plaintiffs that their accounts contained veterans' or social security benefits.

conflicted with the immediate action taken by the DOC pursuant to DC-ADM 005 to collect the monies during incarceration.

The Third Circuit also pointed out that attached to plaintiff Montanez's complaint was what appeared to be a form letter routinely sent to the sentencing courts by the DOC which suggests that a second sentencing order may be filed, after the original sentence is imposed, which is actually the order that triggers the DOC's deductions from the inmate accounts[6]. The court indicated that it could not determine in the plaintiffs' cases whether they received a copy of the sentencing courts' subsequent orders directing the DOC to deduct funds from their accounts or whether existing grievance procedures afforded the inmates sufficient opportunity to respond to the

---

[6]The form letter reads:

Dear Judge _____:

I am writing to obtain clarification of your sentencing order of (date) relating to the above Department of Corrections' inmate. Your order indicates that you would like collection of fines, costs, penalties, and restitution to commence at the time of parole or upon release. With the passage of Act 84 of 1998, the Department has the ability to collect that money immediately. I have attached a copy of Department's policy DCADM-005, "Collection of Inmate Debts" which explains how the Department fulfills its obligations under Act 84.

If you would like the Department to begin collecting immediately, please send a certified order to that effect to the records office at SCI _____.

Montanez, 344 Fed.Appx. at *3 n.3.

orders[7].

The Third Circuit further questioned the procedure by which errors in transactions would be resolved and, finally, indicated that it could not be determined if an inmate receives adequate notice of DOC policy, generally, and of DC-ADM 005, specifically, when the inmate arrives at the correctional facility. Absent knowledge of the administrative procedures in place, the court found that it was limited in its abilities to assess the adequacy of the procedural due process received under Act 84 and DC-ADM 005. Thus, the Third Circuit remanded the actions for resolution of the above issues and for a determination of whether the plaintiffs here were, in fact, provided adequate procedural due process in relation to the deduction of monies from their inmate accounts pursuant to Act 84 and DC-ADM 005.

In their motion for summary judgment, the defendants argue that plaintiff Montanez's claims are barred by the applicable statute of limitations because his complaint was filed more than two years after he became aware of the withdrawal of funds from his inmate account pursuant to Act 84 and DC-ADM 005. (Doc. No. 198, pp. 17-19). The defendants argue that the first withdrawal

---

[7]Based upon the record currently before this court, it does not appear that the form letter was issued in either of the plaintiffs' cases. Plaintiff Montanez indicates that discovery has revealed that there is nothing in his file to indicate that the letter went out seeking the second order from the court. Plaintiff Hale also indicates that there apparently was no letter sent by the DOC or subsequent order issued by the court directing the DOC to deduct funds from his account. This apparently then does not appear to be an issue in this case.

of funds from plaintiff Montanez's account was on April 6, 2000, and that plaintiff Montanez was sent a printout of his account showing the Act 84 deduction shortly thereafter. Despite having knowledge that Act 84 deductions were being taken from his account, the defendants argue that plaintiff Montanez did not file the instant action challenging the deductions until November 29, 2004, well over four years after the deductions began. Even assuming that plaintiff Montanez was unaware of the deductions until November 17, 2002, when he filed a grievance challenging the deductions, the defendants argue that his complaint is still beyond the two-year statute of limitations. The court agrees.

Actions brought pursuant to §1983 are governed by the state statute of limitations for tort actions. McDavitt v. Powell, 2012 WL 959376, *2 (M.D.Pa.) (Caputo, J.) (citing Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir.1998)). In Pennsylvania, a plaintiff is subject to a two-year statute of limitations on any §1983 claims. Id. However, the accrual date of a §1983 cause of action, which is a question of federal law, Muhammad v. Dempsey, 2012 WL 983574, *2 (M.D.Pa.) (Caputo, J.) (citing Wallace v. Kato, 549 U.S. 384 (2007)), is the date on which the plaintiff knew or should have known about the alleged civil rights violation, Id. (citing Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989)). Although the issue of whether a plaintiff knew or should have known about an alleged violation is generally a question of fact for the jury, "where the facts are so clear that reasonable minds cannot differ, the commencement period may be determined as a

matter of law." <u>McDavitt</u>, <u>supra.</u> (citing <u>Debeic v. Cabot Corp.</u>, 352 F.3d 117, 129 (3d Cir. 2003) (quoting <u>Cochran v. GAF Corp.</u>, 66 A.2d 245, 248 (Pa. 1995)).

Plaintiff Montanez argues that his claim is not barred by the applicable statute of limitations because there is a dispute as to the date upon which he discovered that funds were being withdrawn from his inmate account pursuant to Act 84. He argues that the discovery date would be the date upon which he learned or had reason to know that the DOC was unlawfully making deductions from his inmate account and thus violating his civil rights.

Upon review of the record, plaintiff Montanez does not dispute that he received monthly account statements reflecting the Act 84 deductions beginning in April of 2000. He argues, however, that the only description of the transactions was "Act 84" and that he was not aware of the provisions of Act 84 and the reason for the deductions until 2002 when he did research in the library. It is clear from plaintiff Montanez's grievance dated November 17, 2002, in which he requests that DOC officials stop deducting monies from his account, that he was aware that 20% of his deposits were being deducted for payment of his costs and fines pursuant to Act 84. (Doc. No. 202, Ex. Z). Moreover, he complained that the 20% deductions for fines and costs pursuant to Act 84 were "unconstitutional and a violation of his due process." (<u>Id.</u>). Citing to <u>Boofer v. Lotz</u>, 979 A.2d 1047 (Pa.Cmwlth. 2002)[8], plaintiff

---

[8]*Petition for allowance of appeal granted,* 817 A.2d 1079 (Pa. 2003),
(continued...)

Montanez argued, as he does here, that he was never afforded an ability to pay hearing prior to the deduction of monies from his account and that he needed the funds in his account to purchase things such as copies, legal tablets, carbon papers, pens, and envelopes. Thus, it is abundantly clear that at the time plaintiff Montanez filed his grievance on November 17, 2002, he knew of the 20% deductions being made from his account, he was aware that the deductions were being made pursuant to Act 84, he was aware of the purpose of the deductions, and was claiming that the deductions violated his right to due process because he was not given a hearing to determine his ability to pay in relation to the deductions being made. At the latest then, November 17, 2002, is the date upon which the statute of limitations began to run. Plaintiff Montanez did not file the instant action until November 29, 2004, beyond the two-year statute of limitations. His claims are therefore barred by the applicable statute of limitations and the defendants' motion for summary judgment should be granted on this basis[9].

The defendants also argue that neither of the plaintiffs' due process rights were violated by the taking of monies from their inmate accounts pursuant to Act 84 and DC-ADM 005 because those rights were satisfied at

---

[8](...continued)
*reversed and remanded* 842 A.2d 333 (Pa. 2004).

[9]Although the court believes and therefore recommends that the defendants' motion for summary judgment should be granted as against plaintiff Montanez on the statute of limitations argument, in the alternative and out of an abundance of caution, the court will address the merits of plaintiff Montanez's due process claim as well.

16

their sentencing hearings. (Doc. No. 198, pp. 6-9).

With respect to plaintiff Montanez, the defendants' materials provide that his sentencing hearing was held on January 7, 2000, and that plaintiff Montanez was in attendance with his former counsel. Plaintiff Montanez was informed that, as part of his sentence, fines, costs and restitution would be imposed. The sentencing transcript reflects the following with respect to fines, costs and restitution:

> In addition to the above confinement, the defendant shall pay the cost of prosecution[10], pay a fine in the sum of $100, pay restitution in the amount of $148.60 . . .
>
> Defendant shall be subject to such conditions governing parole, including a plan for payment of costs and fines and restitution, as established by the Pennsylvania Board of Parole.

(Doc. No. 196, Ex. E, p. 42).

The actual sentencing order entered by the court included the language that:

> Defendant shall be subject to such conditions governing parole, including a plan for the payment of costs, fines, and/or restitution as established by the Berks County Parole Office, or as established by the Pennsylvania Board of Parole, as applicable.

(Doc. No. 202, Ex. D).

At sentencing, counsel was advised to provide plaintiff Montanez with

---

[10]No specific amount for costs is indicated in either the sentencing transcript, (Doc. No. 196, Ex. E), or the sentencing order, (Doc. No. 196, Ex. F). It is a common practice in Pennsylvania for the sentencing court to simply order a defendant to pay costs and leave the assessment of the amount to the Clerk of Court as this is purely a ministerial duty. See Richardson v. Pa. Dep't of Corr., 991 A.2d 394, 397 (Pa.Cmwlth. 2010).

a document outlining his post-sentence rights as far as time limits for filing post-sentence motions and appeals. (Id. at pp. 42-43).

The defendants point out that plaintiff Montanez filed an appeal of his conviction and sentence on February 7, 2000, and also filed four *pro se* post-trial motions with the Court of Common Pleas[11]. The first of the post-trial motions dated April 24, 2003, is titled "Motion to Vacate and/or Reconsider Fines, Costs Restitution, Nunc Pro Tunc, on the Grounds of Indigence with Memorandum of Law." (Doc. No. 202, Ex. K). In this document, plaintiff Montanez indicates that he is ". . . indigent, with[out] any saving or adequate means of support; menial jail house pay of .19¢ per hour, and had no prospects for any immediate and/or gainful employment." Plaintiff Montanez concludes in this motion that:

> ". . . he was and is unable to pay the said Fines, Cost, and Restitution, and that the Court's failure to convene a hearing prior to sentencing, to determine his financial ability to pay said obligation, renders the sentence Illegal, and therefore this part of the sentence should be Vacated. Furthermore, the petitioner request this Honorable Court to issues (sic) an order authorizing the Reimbursement of any funds erroneously deducted from the petitioner's inmate account and remitted to <u>PETITIONER</u> pursuant to Act 84. In the alternative, the Court should order that payments, if any should be made after petitioner's release.

(Id.) (emphasis in original).

In May 2003, plaintiff Montanez filed his second post-trial motion

---

[11]While defendants have referenced the post-trial motions, they did not provide copies of the motions to which they were referring. Counsel for plaintiff Montanez has provided copies of the purported post-trial motions upon which the court relies.

seeking a copy of any order by the sentencing judge which "directed him to pay fines, costs, and restitution while incarcerated." (Doc. No. 202, Ex. M). This motion was denied with an indication that "no such order was ever issued by this court." (Doc. No. 202, Ex. N)[12].

In his third motion, plaintiff Montanez requested a copy of the sentencing commitment order sent to the DOC by the Clerk of Court wherein fines, costs and restitution were listed. (Doc. No. 202, Ex. S). Apparently, in response to this motion plaintiff Montanez was provided with a copy of his DC-300B[13] form which set forth the information. (Doc. No. 226, ¶22).

_____

[12]In his motion for summary judgment, plaintiff Montanez seems to take issue with the deductions from his inmate account based, in part, upon the fact that the sentencing judge, Judge Lieberman of the Berks County Court of Common Pleas, responded to a motion filed by plaintiff Montanez indicating that he never ordered the deductions from plaintiff Montanez's inmate account and that there was "nothing in the Defendant's Official file to indicate that the Clerk of Courts or anyone else in Berks County requested or authorized deductions from the Defendant's prison account." (Doc. No. 204, pp. 9-10).

To the extent that plaintiff Montanez takes issue with the fact that the deductions were made without a court order authorizing the deductions, §9728(b)(5) authorizes the DOC to make monetary deductions from inmate accounts without imposing the requirement of prior court authorization to do so. See Boyd v. Commonwealth, 831 A.2d 779, 782-83 (Pa.Cmwlth. 2003) (citing George v. Beard, 824 A.2d 393 (Pa.Cmwlth. 2003); Commonwealth v. Fleming, 804 A.2d 669 (Pa.Super. 2002); Sweeney v. Lotz, 787 A.2d 449 (Pa.Cmwlth. 2001), appeal denied by, 572 Pa. 717, 813 A.2d 848 (2002)). Therefore, there was no requirement that the sentencing court issue an order authorizing the "act" of the deduction from plaintiff Montanez's account.

[13]The DC-300B, Inmate Commitment Form, is a DOC created
(continued...)

19

Finally, by motion dated April 19, 2004, plaintiff Montanez requested, *nunc pro tunc*, a default hearing under 42 Pa.C.S. §9730(b)[14] and

_____

[13](...continued)
document, which contains various information relating to the criminal proceedings, including the amount of fines, costs and restitution imposed. It is completed by the Clerk of Court and forwarded to the facility. It is not signed by a judge. The DOC relies upon the DC-300B form to enter financial information into the inmate account system with respect to any fines, costs or restitution owed by the inmate. Pennsylvania courts have held that prison officials can rely on the information provided on DC-300B form to make Act 84 deductions. See e.g., Boyd v. Commonwealth, 831 A.2d 779, 783 n.6 (Pa.Cmwlth. 2003).

[14]Title 42 Pa.C.S. §9730(b) provides:

Procedures regarding default.--

(1) If a defendant defaults in the payment of a fine, court costs or restitution after imposition of sentence, the issuing authority or a senior judge or senior magisterial district judge appointed by the president judge for the purposes of this section may conduct a hearing to determine whether the defendant is financially able to pay.

(2) If the issuing authority, senior judge or senior magisterial district judge determines that the defendant is financially able to pay the fine or costs, the issuing authority, senior judge or senior magisterial district judge may turn the delinquent account over to a private collection agency or impose imprisonment for nonpayment, as provided by law.

(3) If the issuing authority, senior judge or senior magisterial district judge determines that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the issuing authority, senior judge or senior

(continued...)

Pa.R.Crim.P. 706[15]. (Doc. No. 202, Ex. P). In this motion, plaintiff Montanez

_____

[14](...continued)
magisterial district judge may provide for payment in installments. In determining the appropriate installments, the issuing authority, senior judge or senior magisterial district judge shall consider the defendant's financial resources, the defendant's ability to make restitution and reparations and the nature of the burden the payment will impose on the defendant. If the defendant is in default of a payment or advises the issuing authority, senior judge or senior magisterial district judge that default is imminent, the issuing authority, senior judge or senior magisterial district judge may schedule a rehearing on the payment schedule. At the rehearing the defendant has the burden of proving changes of financial condition such that the defendant is without the means to meet the payment schedule. The issuing authority, senior judge or senior magisterial district judge may extend or accelerate the schedule, leave it unaltered or sentence the defendant to a period of community service as the issuing authority, senior judge or senior magisterial district judge finds to be just and practicable under the circumstances.

(4) A decision of the issuing authority, senior judge or senior magisterial district judge under paragraph (2) or (3) is subject to section 5105 (relating to right to appellate review).

[15]Rule 706. Fines or Costs

(A) A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.

(B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the

(continued...)

argued, among other things, that the court improperly imposed costs for prosecution which he was unable to pay. As of the date of his filing, plaintiff Montanez indicated that his inmate account had been assessed $600.00 pursuant to Act 84 and DC-ADM 005. Plaintiff Montanez argued that of the $600.00, the fine of $100.00 and restitution of $148.60 imposed by the court were satisfied and proper. However, plaintiff Montanez argued that the deduction of the additional $351.40 for the assessment of the costs of prosecution was improper because he had not been afforded his due process

---

[15](...continued)
financial resources of the defendant and the nature of the burden its payments will impose, as set forth in paragraph (D) below.

(C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

(D) In cases in which the court has ordered payment of a fine or costs in installments, the defendant may request a rehearing on the payment schedule when the defendant is in default of a payment or when the defendant advises the court that such default is imminent. At such hearing, the burden shall be on the defendant to prove that his or her financial condition has deteriorated to the extent that the defendant is without the means to meet the payment schedule. Thereupon the court may extend or accelerate the payment schedule or leave it unaltered, as the court finds to be just and practicable under the circumstances of record. When there has been default and the court finds the defendant is not indigent, the court may impose imprisonment as provided by law for nonpayment.

rights to determine his ability to pay the costs[16]. Plaintiff Montanez requested relief by way of a hearing under the default provision of §9730. In addition, he sought an order directing that the portion of the sentencing order directing him to pay the cost of prosecution be vacated and that an order be entered directing the DOC to stop collecting monies for the costs from his inmate account. This motion was ultimately denied. (Doc. No. 202, Ex. Q).

The defendants argue that the Pennsylvania Supreme Court in Buck v. Beard, 879 A.2d 157 (Pa. 2005), held that the sentencing hearing and subsequent appeals process provide sufficient due process protections for inmates who have funds deducted from their accounts pursuant to Act 84. The defendants argue that plaintiff Montanez was given notice of the imposition of fines, costs and restitution and an opportunity to be heard with regard to these at his sentencing hearing. They further point out that plaintiff Montanez took part in the appeals and post-trial processes. As such, the defendants argue that plaintiff Montanez has received all of the process due by the Fourteenth Amendment.

Section 4 of Act 84 was enacted on June 18, 1998, and became effective on October 18, 1998, well in advance of plaintiff Montanez's sentencing. Therefore, plaintiff Montanez had notice of the DOC's authority to deduct monies from his account. Buck v. Beard, 879 A.2d 157, 160 (Pa.

---

[16]While the sentencing court may consider a defendant's financial ability to pay fines, it may not consider the financial ability to pay when imposing restitution and costs. See 18 Pa.C.S. §1106(c)(1)(ii); 42 Pa.C.S. §9721(c.1).

2005). Plaintiff Montanez also had the ability to present any evidence he wished with respect to his financial ability to pay any fines imposed by the court.

As discussed above, however, the Third Circuit rejected the district courts' findings that the plaintiffs' sentencing hearings provided them adequate due process.  Initially, the court found the reasoning of <u>Buck</u> informative, but not dispositive. Moreover, the Third Circuit indicated that "[e]ach [district] court held that because inmates are clearly on notice of the provisions of Act 84, and they are allowed to present evidence of their inability to pay any costs, penalties, and restitution at the time they are sentenced, they have been afforded all the notice and opportunity to respond that the Fourteenth Amendment requires." Although the court found it "possible that a sentence could be imposed in a manner that is sufficiently flexible and informative to satisfy a defendant's due process rights regarding any future debits from his/her inmate account," the court was unable to conclude in this case that the notice provided to either plaintiff Hale or plaintiff Montanez was constitutionally adequate. Specifically, the court stated that there was no indication on the record before it that the sentencing judge advised plaintiff Montanez of Act 84 or the fact that the DOC would be deducting funds during his incarceration for payment of the fines, costs or restitution imposed. Instead, the Third Circuit noted that the sentencing court "merely ordered that the defendant 'shall be subject to such conditions governing parole, including a plan for payment of costs and fines and restitution, as established by the

Pennsylvania Board of Parole.'" The Third Circuit found that this statement apparently conflicted with the immediate action taken by the DOC pursuant to DC-ADM 005 to collect monies during incarceration. Nothing presented by the defendants in support of their motion for summary judgment on this point adds to the record regarding plaintiff Montanez's sentencing which was not previously before the court.

Further, the fact that plaintiff Montanez filed post-trial motions in 2003 and 2004, several years after his sentencing, in which he indicated his awareness that the DOC was making Act 84 deductions and challenged those deductions, does not shed any light on the concerns raised by the Third Circuit as to whether plaintiff Montanez's sentencing proceedings provided him with sufficient notice and an opportunity to be heard with respect to the deduction of monies to be taken from his inmate account.

Similarly, with respect to plaintiff Hale, the defendants argue that he was provided adequate due process through his sentencing hearing and subsequent post-trial processes. (Doc. No. 207, Ex. 3). However, plaintiff Hale argues that the sentencing court did not satisfy the requirements of due process as the court did not discuss how costs, fines and restitution should be paid, did not explain Act 84, and did not notify him that his inmate account would be garnished for such payments.

The defendants' materials provide that plaintiff Hale's sentencing took place on January 6, 2004. Both plaintiff Hale and his former counsel were in attendance. The defendants provide that as part of plaintiff Hale's sentence,

fines, costs and restitution were imposed. The sentencing court imposed a fine of $1,000.00, (Doc. No. 207, Ex. 3, p. 20), plus the costs of the proceeding[17], and restitution in the amount of $1,191.11[18], (Id. at p. 22). No mention was made at plaintiff Hale's sentencing hearing concerning deductions of funds to be made by the DOC during his incarceration for payment of his fines, costs and restitution.

On January 13, 2004, a statement of costs was sent to plaintiff Hale. Judgment was entered against plaintiff Hale on the following day[19]. From the record, plaintiff Hale's judgment was forwarded to his home address. It is unclear when plaintiff Hale actually received the judgment. (Doc. No. 207, Ex. 25).

On December 13, 2004, plaintiff Hale filed a motion to amend the sentencing order with regard to the mandatory restitution. (Doc. No. 197, Ex. J, ¶8; Doc. No. 197, Ex. N). In his filing, plaintiff Hale indicated that the DOC was making regular deductions from his inmate account pursuant to Act 84.

---

[17]Again, the specific amount of costs was not enumerated.

[18]Restitution was broken down into amounts of $321.36 to the victim, $223.75 to the Pennsylvania State Police, $16.00 to the Greene County Memorial Hospital, and $630.00 to the Pennsylvania State Police Crime Laboratory.

[19]The judgment was in the amount of $2,783.86, which was the same amount entered into the Inmate Account System as being owed by plaintiff Hale. (Doc. No. 207, Exs. 17, 25). This amount differs from the total of the amounts entered on plaintiff Hale's DC-300B form, which is $4,373.64 (with the amount of restitution being inaccurately transposed to $1,911.11, instead of the court ordered $1,191.11). (Doc. No. 207, Ex. 4).

Plaintiff Hale expressed that the deductions were improper because his conviction was on appeal. As a result, he indicated that he filed a grievance, to which the DOC responded that it would continue to collect the costs and restitution unless the sentencing court entered an order relieving the plaintiff from those obligations. Plaintiff Hale therefore requested in his motion that the court enter an order directing the DOC to stop the deductions from his inmate account pending his appeal. (Doc. No. 207, Ex. 26). The motion was denied by order dated December 15, 2004. (Doc. No. 207, Ex. 27).

As with plaintiff Montanez, the defendants argue that plaintiff Hale was given all the process he was due at his sentencing hearing and subsequent proceedings. However, the defendants again have not provided any record support which would address the specific concerns raised by the Third Circuit to establish that plaintiff Hale was, in fact, given notice that the deductions would occur during incarceration and allowed an opportunity to respond in relation to his sentencing proceedings.

In light of the above, to the extent that the defendants argue that they are entitled to summary judgment on the plaintiffs' due process claims because the plaintiffs received sufficient due process during their sentencing hearings and subsequent appeals processes, the defendants have not met their burden to establish that they are entitled to judgment as a matter of law and, therefore, the defendants' motion for summary judgment should be denied on this basis.

Even assuming that the plaintiffs were not afforded adequate due

process at their sentencing hearings and during their post-trial proceedings, the defendants argue that the plaintiffs received adequate due process once they were received into DOC custody.

In considering the notice requirement, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). As previously discussed, upon being received into the DOC, both plaintiffs were presumably on notice of Act 84 and the DOC's statutory authority to deduct funds from their inmate accounts. The defendants contend that, in addition to this notice, both plaintiff Montanez and plaintiff Hale underwent new prisoner orientation upon entering the DOC which put them on notice of the provisions of DC-ADM 005. With respect to plaintiff Montanez, the defendants provide that when he arrived at SCI-Camp Hill he underwent new prisoner orientation and, as part of this orientation, he received a copy of the Inmate Handbook, which identified and set forth portions of the DOC's grievance policy, DC-ADM 804. (Doc. No. 195, ¶28; Doc. No. 226, ¶28). Although the defendants apparently concede that plaintiff Montanez was not provided with a copy of DC-ADM 005, the Inmate Debt Collection Policy, they indicate that the policy was available for plaintiff Montanez to review or purchase either through the housing unit or from the institutional library. Plaintiff Montanez does not dispute that he underwent new prisoner orientation upon entering in the DOC or that he received a copy of

the Inmate Handbook. (Doc. No. 226, ¶8; Doc. No. 202, Ex. I). He also does not dispute that DC-ADM 005 was available to him to review or purchase a copy to keep as part of his personal property. (Id.). He claims, however, that DC-ADM 005 was not in the initial handbook he received. (Id.). Plaintiff Montanez contends that he only became aware of the policy after he learned that deductions were being taken out of his inmate account and it was only then that he went to the institutional library where he was given access to the English language versions of DC-ADM 005[20].

According to the declaration of Robert G. Gimble, an Institutional Business Manager 3 at SCI-Camp Hill, plaintiff Montanez was also verbally informed that money would be deducted from his account in order to satisfy the court ordered fines, costs and restitution, and that an orientation video

---

[20]Plaintiff Montanez indicates that the DOC does not provide copies of policies in Spanish, his primary language. (Doc. No. 202, Ex. I, ¶¶9-10). In considering plaintiff Montanez's appeal, the Third Circuit noted that the method of communicating a policy clearly has Fourteenth Amendment implications indicating that some inmates are either illiterate or cannot read at a level that may be required to understand the DOC's written policies. See Montanez, 344 Fed.Appx. at 837 n.5 (citing Wolff v. McDonnell, 418 U.S. 539 (1974); 28 C.F.R. 542.16(b)). In this case, although plaintiff Montanez claims that Spanish is his primary language, he makes no claim that he cannot read or write the English language. The court notes that his sentencing hearing transcript reflects that he is clearly able to speak the English language. Moreover, from his numerous and extensive pro se filings with the court, including responses to this court's orders, it is apparent that he is also able to read and write the English language. In addition, to the extent that he had difficulty understanding the policy which was written in English, he makes no claim that he requested but was not provided assistance with understanding the policies.

was shown to the inmates that discussed DC-ADM 005. (Doc. No. 195, ¶29). Plaintiff Montanez specifically denies this, stating that he was not verbally informed about Act 84 and that, while there may now be a video and presentation given to inmates regarding Act 84, no video or other presentation was given at the time he was committed to the DOC. (Doc. No. 226, ¶29).

Finally, the defendants' materials provide that entries of the amounts owed by plaintiff Montanez were made into the DOC computer system based upon information from his DC-300B form and that a printout of these entries was prepared and given to plaintiff Montanez along with a notice of the Inmate Debt Collection Policy[21]. Plaintiff Montanez concedes that the DOC received his DC-300B form and entered the amounts owed by him into the DOC system and that a printout was prepared and given to him reflecting those amounts. Plaintiff Montanez denies having received the notice of DC-ADM 005 along with the printout advising him that monies would be deducted from his account, or the method by which this would be done. (Doc. No. 226, ¶32). Although not indicative as to whether plaintiff Montanez received notice of

---

[21]The defendants also contend that the amounts entered were based upon information in plaintiff Montanez's sentencing order. In response, plaintiff Montanez specifically denies that the DOC received his sentencing order and argues therefore that amounts entered could not have been based upon any such order. (Doc. No. 226, ¶30). Even if the DOC had the sentencing order, plaintiff Montanez argues that the DOC could not have relied upon the order in entering the amounts because the order did not contain the amount of costs owed by him. (Id.). Plaintiff Montanez does not, however, dispute that the DOC received his DC-300B form and entered the amounts owed by him based upon it. (Id.).

DC-ADM 005 or not, plaintiff Montanez points out that the record contains correspondence to plaintiff Montanez's counsel which indicates that a copy of the notice could not be located in plaintiff Montanez's institutional file. (Doc. No. 202, Ex. G)[22].

Although it seems somewhat tenuous that plaintiff Montanez did not receive any of the notice which the defendants provide is given to all inmates upon receipt into the DOC regarding Act 84 and the resulting deductions, including the videotape presentation, oral information at orientation, and the written notice upon receipt of information from the sentencing court regarding monies owed by him, given the disputed facts between the declarations of Mr. Gimble and plaintiff Montanez, there appears to be a material issue as to whether plaintiff Montanez, in fact, received adequate notice of DC-ADM 005 prior to the deduction of monies from his inmate account.

With respect to plaintiff Hale, the defendants contend that he also underwent new prisoner orientation at which he received an Inmate

---

[22]Plaintiff Montanez offers that defense counsel has indicated through correspondence that there is nothing in his file to indicate that he was provided notice that the deductions would be taken. Upon review, the correspondence reflects that those documents in plaintiff Montanez's DC-15 file relating to the issue in this litigation and, specifically, documents relating to the multiple notices provided to Mr. Montanez by the Court of Common Pleas and by DOC were provided to counsel through discovery. Upon order of court, the DOC re-reviewed the file and found no further documentation related to this litigation. It was specifically indicated that a form notice provided to inmates explaining the collection of inmate debts pursuant to Act 84 and DC-ADM 005 could not be located in plaintiff Montanez's file. (Doc. No. 202, Ex. G).

Handbook. In plaintiff Hale's case, the defendants claim that the Inmate Handbook contained pertinent portions of both the grievance policy, DC-ADM 804, and the Inmate Debt Collection Policy, DC-ADM 005. Plaintiff Hale concedes that when he arrived at SCI-Camp Hill he received prisoner orientation, as well as an Inmate Handbook, but specifically denies that the Inmate Handbook set forth the provision of DC-ADM 005. Despite his claim, plaintiff Hale's exhibits contain portions of the 2003 Edition of the Inmate Handbook received by plaintiff Hale, which discusses relevant portions of DC-ADM 005. Specifically, the Inmate Handbook provides, in relevant part:

**I.    Accounting**

    **A.    General**

*   *   *

    5.    If you were ordered to pay restitution, reparation, fees, costs, fines, and/or penalties associated with court proceedings, the DOC will collect monies from you account to pay those amounts. (**See DC-ADM 005, "Collection of Inmate Debts".**)

*   *   *

    **B.    Collection of Inmate Debts (DC-ADM 005)**

    1.    In accordance with **42 Pa.C.S. §9728**, the DOC shall collect monies from your account if the court orders you to pay restitution, reparation, fees, costs, fines, and/or penalties associated with the criminal proceedings.

*   *   *

    5.    Prior to your release to state parole supervision or to a Community Corrections facility, the facility will provide a record of payments made, remaining account balances of any court

ordered restitution, and/or other court related
financial obligations to the Board of Probation
and Parole or the Regional Office of the
Community Corrections.

6.      If you are to be released at the expiration of
your maximum sentence, the business office
will provide a record of payments made and
remaining account balances of any court
ordered restitution or other court related
financial obligations to the county probation
department or other agent designated by the
court order.

7.      For more information on the collection of debts,
refer to DOC policy **DC-ADM 005**.

(Doc. No. 207, Ex. 35) (emphasis in original). Citing to the Third Circuit's

previous declaration that a sentencing court's ". . . general statement of

financial obligations and notice of the state's ability to debit an unspecified

amount from an inmate account does not settle the legal question of whether

violations of due process occurred . . ." <u>Montanez</u>, 344 Fed.Appx. at 835-36,

plaintiff Hale argues that the information provided in the handbook was

insufficient to place him on notice of the specific provisions of DC-ADM 005.

However, plaintiff Hale was clearly aware that he owed monies for fines, costs

and restitution. Moreover, the information in the Inmate Handbook clearly put

him on notice that the DOC was under a statutory obligation to collect such

amounts owed by inmates. The Inmate Handbook further informs inmates that

they should refer to the full content of DC-ADM 005 for additional information

regarding the method of collection of debts. As the defendants' materials

provide, copies of the policy were available for review or to make copies of

either on the block or in the library. To the extent that plaintiff Hale would have

referred to the policy as directed, DC-ADM 005 clearly outlines the specific method by which monies would have been deducted from his account for the amounts owed. Plaintiff Hale does not contend that he requested and was not given access to DC-ADM 005 such that he could not discover the method by which the fines, costs and restitution would be deducted from his account. Although plaintiff Hale indicates that he was "not provided a copy of DC ADM 005 when [he] arrived to SCI Pittsburgh, SCI Camp Hill, or SCI Rockview," he does not indicate that he ever requested and was denied access to the policy. In fact, he indicates that when he arrived at SCI-Rockview, he obtained a copy of DC-ADM 005 from the library.

As with plaintiff Montanez, the defendants have provided the declaration of Mr. Gimble, which indicates that plaintiff Hale was also verbally informed at orientation that money would be deducted from his inmate account to satisfy the court ordered fines, costs, and restitution, and that he also viewed a video orientation that discussed the DOC's Inmate Debt Collection Policy. (Doc. No. 196, Ex. A). As did plaintiff Montanez, plaintiff Hale through his own declarations summarily denies these facts. (Doc. No. 207, Exs. 1, 48).

The defendants' materials further provide that the DOC received the Sentencing Order and the DC-300B form regarding plaintiff Hale from the sentencing court and, from these documents, entered the amounts owed by plaintiff Hale into the DOC's system. (Doc. No. 196, Ex. A). According to Mr. Gimble's declaration, a printout of the entries was prepared and given to plaintiff Hale along with a notice of DC-ADM 005. (Id.). Plaintiff Hale's DC-15

institutional file contains a copy of the printout dated February 19, 2004, with total costs entered of $2,783.86[23], along with a copy of a form notice dated the same day advising of the DC-ADM 005 debt collection policy. (Doc. No. 202, Ex. G).

Considering all of the above, although there is a dispute as to whether plaintiff Hale received all of the notice regarding Act 84 and DC-ADM 005 which the defendants claim, there is support in the record that plaintiff Hale received sufficient notice of the relevant provisions of DC-ADM 005 so as to satisfy the notice requirements.

However, even assuming that both plaintiffs received adequate notice of Act 84 and DC-ADM 005, the defendants concede in their materials that "[t]he DOC does not provide any additional opportunity to be heard before it deducts money from an inmate account pursuant to Act 84." (Doc. No. 198, p. 11). To the extent that either plaintiff disagreed with the deduction of monies from his account, the defendants argue that the post-deprivation grievance system was available to them and that they were fully aware of this. The defendants argue that this is sufficient to satisfy the due process requirements of Mathews v. Eldridge, supra.

---

[23]There is a discrepancy in the documentation for plaintiff Hale as to the proper total amount of fines, costs and restitution owing. It would appear, however, that the amount entered by the DOC in its system, $2,783.86, (Doc. No. 207, Ex. 17), which was apparently taken from the judgment entered in his case, (Doc. No. 207, Ex. 25), is significantly less than the amount which appears on plaintiff Hale's DC 300B form which is $4,373.64, (Doc. No. 207, Ex. 14).

In considering the consolidated appeals in the instant action, citing to its previous Hale decision, the Third Circuit indicated that "absent extraordinary circumstances, we have usually found that due process requires predeprivation notice and hearing." Montanez, 344 Fed.Appx. at 834-35 (citing Hale, 168 Fed.Appx. at 534). The court further indicated, however, that procedural due process concerns invoke the balancing test of Matthews v. Eldridge, supra. In the plaintiffs' cases, the court found that such factors could not be weighed given the state of the record. In weighing the Mathews factors, this court is mindful that "[n]ot all situations calling for procedural safeguards call for the same kind of procedure." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Mathews, 424 U.S. at 334. Rather, it is "flexible and calls for such procedural protections as the particular situation demands." Id. In identifying what process is due, the court must weigh the three Mathews factors as outlined above. Where a deprivation takes place pursuant to a prison policy, as is the case here, the balancing test in Mathews must be considered to determine if a pre-deprivation hearing is necessary under the Fourteenth Amendment or whether the post-deprivation process is adequate[24].

---

[24]Citing to Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982), plaintiff Hale argues that because the deductions from his account resulted from a state-established policy and procedure, not from a randomized unpredictable act, the opportunity to be heard must occur prior to the deduction. He argues that this proposition was reaffirmed by the Third Circuit
(continued...)

Considering the first <u>Mathews</u> factor in this case, it seems to go without saying that inmates possess a private interest in the monies contained in their inmate accounts[25]. This interest, however, is not so substantial as to outweigh the competing factors to be considered by the court under <u>Mathews</u>. Moreover, in considering the private interest involved, it is of note that inmates are not absolutely deprived of their interest in the monies in their account when applied toward the debt owed for fines, costs and restitution pursuant to Act 84. To this extent, the inmate is receiving a benefit from the application of his money toward court-ordered debt to the extent that any payment toward those debts while incarcerated works to the inmate's benefit upon release.

---

[24](...continued)
in remanding this matter to the extent that the court indicated that "absent extraordinary circumstances, we have usually found that due process requires predeprivation notice and a hearing." <u>Montanez</u>, 344 Fed.Appx. 834-35 (quoting <u>Hale</u>, 168 Fed.Appx. 534)). However, as indicated herein, in considering the previous appeal, the court specifically noted that it did not have the benefit of the record in order to consider the factors presented in <u>Mathews</u>, which would determine whether post-deprivation procedures were adequate to address the procedural due process requirements. <u>Montanez</u>, 344 Fed.Appx. at 836.

[25]Plaintiff Hale argues that inmates possess a strong private interest in their inmate accounts because these accounts are used to provide for the inmates' "basic needs," including food and clothing. The fact is, however, that incarcerated individuals are not required to provide themselves with the necessities of life, including food, clothing, medical care and shelter. <u>See</u> <u>Buck</u>, 874 A.2d at 161; <u>Sweeny v. Lotz</u>, 787 A.2d 449 (Pa.Cmwlth. 2001), *appeal denied*, 813 A.2d 848 (Pa. 2002). Thus, while an inmate may chose to use funds to supplement those basic needs provided, the realities of incarceration do not require that they provide these necessities for themselves.

Under this first <u>Mathews</u> factor, plaintiff Hale argues that he was deprived of the interest in his funds because on several occasions he was denied photocopies relating to legal matters because his account balance was too low. He further argues that on at least three occasions mail which he was attempting to send was returned to him from the mailroom because he had a negative account balance. To the extent that plaintiff Hale argues that he was denied photocopies because his account balance was too low, DC-ADM 005 was structured so that only 20% of new money placed in the inmate's account will be deducted and the inmate retains the other 80% of monies deposited. This structure allows the inmate's account to continue to grow and allows the inmate funds to spend how he chooses. However, as with non-incarcerated individuals, it is the inmate's responsibility to decide how to budget his funds and how those funds would best serve his interests. Moreover, although plaintiff Hale alleges that his account went into the negative as a result of the Act 84 deductions and that he was denied access to the courts as a result thereof, the very nature of the policy which provides that the 20% deduction will not be made unless the inmate has at least $10.00 in his account does not allow for the inmate's account to go into a negative balance. Therefore, while plaintiff Hale's account may have gone into a negative status for other reasons, it would not have been the Act 84 deductions which were the cause.

The second <u>Mathews</u> factor considers the risk of an erroneous deprivation of such interest through the procedures currently used and the

value of additional or substitute procedural safeguards. Considering the record before the court and the arguments of the parties, the risk of error in withholding monies from inmates' accounts pursuant to Act 84 and DC-ADM 005 appears to be fairly minimal. Fines and restitution are determined and imposed at the time of the sentencing hearing, while costs are generally imposed by the court at sentencing and the amount set by the clerk of court. Individuals are given the opportunity to present evidence with regard to ability to pay fines at the sentencing hearing. The DOC receives notification of the amounts owed by an inmate by way of the sentencing order and/or the DC-300B form. Provided that an inmate has at least $10.00 in his/her account, 20% deductions are automatically made from the account on a monthly basis. This task is routine and ministerial in nature. See Tillman, 221 F.3d at 422 ("The assessments and takings pursuant to the program involve routine matters of accounting, with low risk of error."). This is not to say that errors cannot be made when entering the amounts imposed by the sentencing court into the DOC system; however, were this to occur, the grievance system is a remedial process through which an inmate can obtain relief[26].

Further, in considering this second Mathews factor, the value of implementing additional procedures in the form of having the DOC hold an ability to pay hearing before the deduction of monies from an inmate's

---

[26]In cases where an amount is incorrectly determined or entered by the sentencing court, the remedy for the inmate is through the sentencing court and not through the DOC's grievance system.

39

account, would appear to be minimal. The institution is aware of the amounts contained in the inmates' accounts. The amount to be deducted is set by DC-ADM 005, which limits the deductions to 20% of the inmates' funds and are never assessed when an inmate has less than $10.00 in his their account. Thus, while an inmate may otherwise bring his account into a negative status, it will not be the deductions pursuant to DC-ADM 005 which does so.

Plaintiff Hale argues that the need for additional procedural safeguards is high because the deductions are automatic and if they are in error, that error will occur on a monthly basis. As previously addressed when discussing the risk of error, on the chance that an erroneous deduction is made, the grievance system exists to remedy the situation. Moreover, DC-ADM 005 itself took into consideration the need for the inmate to provide for other matters, such that even if an erroneous deduction of 20% of the inmate's funds were to occur, it would not present significant undue hardship until the matter could be resolved.

Further, in considering the second Mathews factor, the defendants argue that a determination regarding ability to pay prior to the deductions would have no value given that the DOC would be unable to exercise any discretion in determining the amount of an inmate's monthly payment. The plaintiffs argue that, in fact, it was the DOC which set 20% as the amount of the deduction pursuant to Act 84 and therefore they have the discretion to

vary the amount of the deduction[27].

With respect to this argument, Act 84 mandated that the DOC adopt guidelines for Act 84 collections. Following this mandate, a committee comprised of various DOC employees[28] assembled to consider and propose reasonable guidelines in response to the legislative directive. Ultimately, the DOC promulgated DC-ADM 005. In fashioning DC-ADM 005, the defendants' materials establish that the 20% amount was based upon several factors

---

[27]Plaintiff Montanez, through counsel, also argues that in setting the 20% standard deduction, the DOC exceeded the legislative grant of authority given to the DOC and violated his right to equal protection. In addition, plaintiff Montanez filed a *pro se* supplemental brief in support of his motion for summary judgment in which he argues: (1) DC-ADM 005 constitutes criminal fraud and racketeering in violation of the RICO Act because Jeffrey Beard lacked the requisite legal authority to issue the policy; and (2) DC-ADM 005 encroaches upon the judiciary powers of the Courts of Common Pleas in violation of the separation of powers doctrine. (Doc. No. 259). The only issue properly before the court is whether the plaintiffs' procedural due process rights were violated by the application of either Act 84 or DC-ADM 005. Therefore, the merits of plaintiff Montanez's additional claims will not substantively be considered herein.

Along this same line, plaintiff Hale argues that the substance of Act 84 and DC-ADM 005 are unconstitutional. As indicated above, the only issue properly before the court is whether plaintiff Hale was afforded procedural due process in relation to the deductions from his account. Therefore, the court will not address the substance of plaintiff Hale's constitutional challenge relating to Act 84 and DC-ADM 005 herein.

[28]Plaintiff Montanez takes issue with the fact that neither the public nor inmates were allowed input into the promulgation of DC-ADM 005. Plaintiff Montanez has not provided and the court has found no support for the proposition that the DOC is required to solicit public or inmate input on such administrative matters.

including: (1) from an accounting standpoint, a fixed amount would make implementation easier, (2) the programming aspect of what impact it would have upon the inmate's daily transactions, and (3) what reasonable amount could be taken while not taking all of the inmates' funds considering other transactions that they may need to make. (Doc. No. 202, Ex. H, pp. 40-42). Moreover, it was determined that deductions will not be made from an inmate's account if the inmate has less than $10.00 in his account which allows the inmate to maintain a minimum amount of funds for other purposes. The set 20% deduction allows the inmate to carry forward amounts for other expenses. In considering a due process challenge to Act 84 and DC-ADM 005, the Pennsylvania Supreme Court found that the guidelines promulgated through DC-ADM 005 were a reasonable response to the legislative directive. Buck v. Beard, 879 A.2d 157, 160 (Pa. 2005) ("The Department has simply carried out the lawful order of the sentencing court by establishing and following reasonable guidelines pursuant to Section 9728(b)(5)."). In fact, the 20% guidelines imposed by DC-ADM 005 follow the same federal and Pennsylvania State standards for payments of filing fees in civil prison condition litigation by inmates, both of which have been upheld. See 28 U.S.C. §§1915(b)(1), (2) (The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of– (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the

complaint or notice of appeal. After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.); 42 Pa.C.S. §6602(c) ("Following payment of an initial partial filing fee, the prisoner shall make monthly payments of 20 percent of the preceding month's income credited in the prisoner's account. The prison having custody of the prisoner shall deduct payments from the prisoner's account when the prisoner's account balance exceeds $10 until the filing fees are paid in full."). The determination to set the amount to be deducted for Act 84 payments at 20% has been made by the DOC based upon the knowledge and experience of DOC administrators who have significant deference in developing policies which assist in the efficient operations of prisons. Bell v. Wolfish, 441 U.S. 520 (1979). It is not for the court to second guess or oversee matters which are related to prison administration. See Procunier v. Martinez, 416 U.S. 396, 405 (1974). In fact, in considering whether the DOC was authorized to establish a payment plan or a percentage of monies that it could deduct from inmate accounts pursuant to Act 84, the Pennsylvania Commonwealth Court found that the General Assembly was free to grant authority to the DOC to develop a procedure by which to collect monies for costs, fines and restitution of inmates who are in its care and custody. Boyd v. Commonwealth, 831 A.2d at 783. By way of

§9728(b)(5), the court found that the General Assembly had granted the DOC the authority to develop guidelines to assist it in its responsibilities in collecting costs, fines and restitution, to which the DOC responded with DC-ADM 005. The Commonwealth Court found that because the General Assembly granted the DOC authorization to develop guidelines for making deductions for fines, costs and restitution, the DOC had the discretion to determine the method by which it would do so. Thus, the court agrees with the plaintiffs that the DOC does ultimately have the discretion to alter or vary the percentage taken for Act 84 payments; however, the court also finds that the DOC has already exercised its discretion and determined a reasonable amount to be deducted.

In considering the final <u>Mathews</u> factor of the governmental interest, as discussed by the court in <u>Buck</u>, there is a significant public policy consideration in ensuring that inmates pay their court ordered obligations:

> The public policy of the Commonwealth favors restitution. Section 1106(c)(1)(l) of the Crimes Code directs the court to order full restitution regardless of the financial resources of the defendant. Section 9721(c) of the Sentencing Code, 42 Pa.C.S. §9721(c) provides that "the court shall order the defendant to compensate the victim of his criminal conduct for the damage or injury that he sustained." Consistent with this policy, the Legislature amended Section 9728 in 1998 by adding Section 9728(b)(3), to provide that the clerk of courts shall transmit orders for restitution, fines, and costs to the county correctional facility or Department of Corrections. It also added Section 9728(b)(5), which provides that the county correctional facility or Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation. The Legislature used the mandatory language shall in authorizing the deductions.

<u>Buck</u>, 879 A.2d at 160-61.

In granting the DOC the power to collect such monies, "the Legislature recognized that the deducted amounts were relatively small and that it was impractical and burdensome for trial courts to conduct an ability to pay hearing anytime the funds in an inmate's account fluctuated.[29]" Id. at 161.

---

[29]Both plaintiffs argue that Buck is inapplicable as it involved a determination as to whether a judicial ability to pay hearing prior to each deduction was necessary, which they claim they do not seek. Despite this, plaintiff Montanez argues that "[i]f an inmate should wish a hearing to determine an individualized payment schedule under Rule 706, it can easily be arranged with modern technology as all of the correctional institutions have videoconferencing capabilities with the local courts and these are frequently used for hearings before Common Pleas judges." This language seems to indicate that plaintiff Montanez is seeking a judicial determination of ability to pay. In any event, the same line of reasoning would apply to an administrative ability to pay hearing. Considering the defendants' materials regarding the amount of inmates received into the DOC each month and those that are subject to Act 84 deductions, it is simply not practical or reasonable to expect the DOC to provide each inmate subject to Act 84 deductions a determination prior to making deductions from his/her account.

Along this line, in rendering its decision remanding these actions, the Third Circuit indicated that the state of the record did not allow it to weigh the Mathews factors, but stated that "other jurisdictions have found providing an informal, non-adversarial review of written objections to the proposed withdrawal of the inmate's funds would be neither burdensome nor impractical." Montanez, 344 Fed.Appx. at 836 n.4 (citing Walters v. Grossheim, 525 N.W.2d 830, 833 (Iowa 1994)). Plaintiff Hales argues that this weighs against the defendants on the third Mathews factor. With respect to the Walters decision, the court notes initially that the Iowa statute involved in that case specifically required the DOC to consider individualized factors, such as the inmate's income, physical and mental health, education, employment and family circumstances, prior to deducting monies for the payment of court-imposed fines, costs and restitution. No such requirement exists in this case. Moreover, it is unclear from the Walters case as to whether

(continued...)

The imposition of restitution, fines and costs serve to further the public policy favoring crime victim restitution. The restorative and rehabilitative purposes behind the public policy cannot be furthered without actual collection of the restitution, fines and costs imposed. In amending the Sentencing Code in 1998 through the enactment of Act 84, the General Assembly added a collection procedure to further the public policy. This collection procedure does not stand in place of the sentencing court's ability to determine the amount of fines, costs and restitution, nor does it allow the DOC to alter the amount of fines, costs and restitution imposed. Instead, Act 84 ensures that the monetary sanctions imposed in furtherance of public policy do not go uncollected for the duration that the defendant is incarcerated at the state's expense.

Of importance here, Act 84 did not replace the original collection procedures in place for unincarcerated individuals, which allow for the court to conduct a hearing to determine a defendant's ability to pay and either refer the matter to a collection agency or set up an installment payment plan.

---

[29](...continued)
the Iowa DOC faced the same administrative burdens in allowing such review as the defendants have proposed the Pennsylvania DOC would in this case. Finally, the defendants' materials provide in this case that for various reasons inmates' accounts frequently fluctuate. As a result, it would seem that the determination made by the Walters court to simply provide one review of an inmate's ability to pay prior to deducting monies from an inmate's account would be an exercise in futility, as the initial determination regarding an inmate's ability to pay could presumably change month to month depending on the circumstances.

Instead, Act 84 added a new procedure which requires the clerk of courts to transmit orders imposing fines, restitution and costs for incarcerated individuals to the appropriate correctional facility or DOC for collection by that entity. Specifically within Act 84, §9728(a), includes the language "[e]xcept as provided in subsection (b)(5) . . ." and otherwise proceeds to readopt the previous collection procedure. This introductory language of §9728(a) reflects the General Assembly's intent to differentiate the new collection procedure from the then existing procedure. Such language would have no relevance if the new mechanism were not intended to stand on its own.

Further, in fashioning subsections (b)(3), which provides that the clerk of courts shall transmit orders for restitution, fines, and costs to the county correctional facility or DOC, and (b)(5), which provides that the county correctional facility or DOC shall be authorized to make deductions from inmate accounts for the purposes of collecting restitution or other court-ordered obligations, the General Assembly utilized mandatory language, which is inconsistent with plaintiff Montanez's argument that the deductions should only come after a hearing. Requiring that a hearing first take place would, in essence, alter the meaning of the statute. Because the General Assembly did not provide that the county correctional facility or DOC shall only be authorized to make deductions after hearing on the ability to pay or upon order of court, such language should not be read into the statute.

Interpretation of Act 84 as not requiring a hearing on ability to pay prior to the deduction of monies from an inmate's account for payment of court

ordered fines, restitution and costs, is consistent with the realities of the life of incarceration, which does not require the inmate to provide himself with the necessities of life, including food, clothing and shelter. See Sweeny v. Lotz, 787 A.2d 449 (Pa.Cmwlth. 2001), *appeal denied*, 813 A.2d 848 (2002). The purpose of the default hearing pursuant to §9730, on the other hand, is to determine the individual's ability to pay considering that he must also provide himself with such necessities. Therefore, for one who is incarcerated, a hearing as required by §9730 would be of little benefit as DOC officials are aware that the individuals are provided the necessities of life and are also aware of the resources of the inmate at any given time.

Further, as indicated above, the DOC has a significant interest in maintaining control over administrative matters. The defendants argue that the plaintiffs are asking the court to require the DOC to implement a system for prisoners to object to the deduction of money from their prison accounts for the payment of sentenced fines, court costs and restitution which would be highly burdensome and require the DOC to expend significant resources. Currently, the DOC provides that the across-the-board deduction allows for deductions which are ministerial in nature and are relatively simple to make, while minimizing the risk of error. To require the DOC to hold individualized hearings and fashion individualized payment plans for inmates subject to Act 84, according to the DOC, would prove to be both administratively and fiscally burdensome based sheerly on the number of inmates entering the DOC on

a monthly basis which would be subject to such determinations[30]. The court is not the entity in the best position to determine what is the manner by which to collect the amounts mandated by Act 84. The DOC has made a reasonable determination that an across-the-board deduction is the best way to collect such monies given the large amount of inmates entering into the DOC on a monthly basis who are subject to the collection of Act 84 monies. The court should give deference to the DOC with respect to such administrative determinations.

Plaintiff Montanez responds to the defendants' excessive burden claim that he is not asking the court to require the DOC to implement a system for inmates to object to the deduction of money from their accounts pursuant to Act 84. Instead, plaintiff Montanez argues that he is only asking the court to enjoin the DOC from deducting a flat 20% from his inmate account to satisfy his Act 84 obligations. Plaintiff Montanez argues that he is entitled to be provided "with the rights of all other defendants to have a court ordered payment schedule based on his ability to pay, as required in section 9730 of the Sentencing Code and Rule 706 of the Pennsylvania Rules of Criminal Procedure." Specifically, he argues that prior to the confiscation of monies from his account he was entitled to a hearing to determine his ability to pay

---

[30]The defendants' materials provide that the DOC receives approximately 900 to 950 new inmates each month who are potentially subject to Act 84 deductions, and that approximately 400 to 450 of the inmates received each month have Act 84 paperwork that allows the DOC to immediately begin deducting money from their accounts.

and to set up a payment schedule. Plaintiff Montanez argues that this would only be administratively burdensome to the extent that the persons inputting the data would have to input individual deduction amounts for each inmate instead of relying on a flat 20% for everyone.

With respect to this argument, in addition to the reasoning set forth above, as discussed by the Pennsylvania Supreme Court in Buck, §9728(b)(5) was enacted as a special provision limited to a particular class of offenders, (i.e., prisoners), and a particular type of asset, (i.e., inmate accounts). Pursuant to §9730(b) of the Sentencing Code, when a defendant is in default, the court of common pleas conducts a hearing to determine the defendant's ability to pay, and then may order an appropriate payment plan. In conjunction with a §9730(b) hearing, the court is to consider the defendant's financial resources and ability to pay the court ordered sanctions. However, as stated in Buck, in granting the DOC the supplementary power to collect court-ordered financial obligations from inmate accounts, the Pennsylvania Legislature recognized that the deducted amounts were relatively small and that it would be impractical and burdensome for the court to conduct an ability to pay hearing anytime the funds in an inmate's account fluctuated. Prior to the enactment of §9728(b)(5), if a prisoner did not make voluntary restitution payments, the only recourse was for the court to order a default hearing pursuant to §9730. Section 9728(b)(5) therefore provides an additional procedure for deducting restitution, fines, and costs directly from inmate accounts pursuant to a legally imposed sentence.

Thus, considering the <u>Mathews</u> factors, as applied to the instant action, the court finds that the plaintiffs were afforded adequate due process in relation to the deduction of monies from their accounts pursuant to Act 84 and DC-ADM 005, in that they were afforded adequate post-deprivation procedures through which they could challenge any deductions from their inmate accounts pursuant to Act 84 and DC-ADM 005[31]. This finding is consistent with a case just recently decided by the Third Circuit, in which an

---

[31]Plaintiff Hale argues that the grievance process is inadequate in this case because the percentage to be deducted from incoming funds is unable to be changed. However, in other situations where deductions are made from an inmate's account pursuant to DOC policy which are not subject to change, such as in the case of deductions for medical expenses and housing costs, the post-deprivation grievance process has been found to be sufficient. <u>See e.g.</u>, <u>Tillman v. Lebanon County Correctional Facility</u>, 221 F.3d 410 (3d Cir. 2000) (inmate was not deprived of procedural due process when county correctional facility levied and collected fee for housing costs as it was impractical for facility to provide predeprivation proceedings, fees program had low risk of error, and adequate postdeprivation remedy was provided through facility's grievance program); <u>Reynolds v. Wagner</u>, 128 F.3d 166 (3d Cir. 1997) (county prison's program charging inmates fee for medical care did not violate procedural due process as result of providing for fee deductions from inmates' accounts even when inmate did not sign authorization form); <u>Rambert v. Beard</u>, 2012 WL 760619 (M.D.Pa., Mar. 7, 2010) (Nealon, J.) (inmate grievance system adequate to provide inmates with procedural due process protection from the taking of funds from their account for medical co-pay). Further, plaintiff Hale concedes in his brief that the grievance procedure is adequate to clarify errors in the amount of the costs, fines and restitution entered by the DOC, such that staff would be able to contact the courts to receive updated sentencing orders and compare the information to what is entered in the system and that inmates would be able to utilize the grievance system to raise any claim that the DOC has withheld too much money, above and beyond what the inmate owes for court-ordered obligations.

inmate at SCI-Albion alleged that the DOC improperly deducted court costs and fees from his account pursuant to Act 84 despite the fact that his commitment order provided that these monies were to be paid by the county. Pettaway v. SCI-Albion, 2012 WL 1850919 (3d Cir. (Pa.), May 22, 2012) (per curiam). The plaintiff filed a grievance to which he attached a portion of his sentencing transcript wherein the sentencing judge indicated that the costs, which totaled $605.19, would be "on the county." In response to the plaintiff's grievance, the DOC terminated the collection of costs from the plaintiff's account and returned to the plaintiff the monies which were deducted from his account but not yet remitted to the county. The plaintiff was informed that he would need to contact the county for those funds which were deducted from his account and already remitted to the county.

In considering the defendants' motion to dismiss the inmate's complaint challenging the Act 84 deductions, the magistrate judge to whom the case was assigned[32] determined that the inmate's claims were barred by the Eleventh Amendment. She further determined that any amendment by the inmate to name specific persons responsible for the wrongful deductions would be futile because the post-deprivation grievance procedures available at SCI-Albion satisfied all of the requirements of procedural due process.

On appeal, in a *per curiam* decision, the Third Circuit agreed that the magistrate judge properly dismissed the inmate's complaint because it was

---

[32]The parties consented to the jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. §636(c)(1).

barred by the Eleventh Amendment. Further, and more importantly for purposes of the instant action, the Third Circuit agreed that any amendment to the complaint would be futile. In doing so, the court stated:

> Procedural due process guarantees that the State will not deprive an individual of a protected interest in property without due process of law, Parratt v. Taylor, 451 U.S. 527, 537 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327 (1986), but the United States Supreme Court has held that meaningful post-deprivation remedies provide sufficient due process for negligent deprivations of property, Parratt, 451 U.S. at 530, and intentional deprivations of property, Hudson v. Palmer, 468 U.S. 517, 533 (1984). The Pennsylvania Department of Corrections grievance procedure provides an adequate post-deprivation remedy, *see, e.g.,* Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 422 (3d Cir. 2000), and the existence of this post-deprivation remedy forecloses his due process claim.

Id. at *2.

Thus, in Pettaway, where the inmate made a procedural due process challenge to deductions from his account pursuant to Act 84, the Third Circuit found that the post-deprivation grievance remedies were adequate to fulfill any due process requirements.

In addition to their argument that the plaintiffs were afforded adequate due process, the defendants argue that any challenge to the amounts owed by the inmates is barred by Heck v. Humphrey, 512 U.S. 477 (1994). Heck prevents an indirect attack on the validity of a conviction *via* a civil rights complaint unless the conviction has, in effect, been overturned. In Heck, the Court held:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction

or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

Id. at 486-87 (footnote omitted).

The plaintiffs both respond to the defendants' Heck argument that they are not challenging their convictions or the imposition of restitution, costs and fines by the sentencing courts, but are challenging the method of deducting those amounts from inmate accounts by the DOC pursuant to Act 84 and DC-ADM 005[33]. To this extent, any finding in the plaintiffs' favor on their claims

_____

[33]The court notes that in his motion for summary judgment plaintiff Montanez argues that DC-ADM 005 violates his right to due process, in part, because he did not receive notice or an opportunity for a hearing to challenge the amount of the court costs which he was required to pay. In this respect, he concedes that a set fine and restitution were imposed at his sentencing hearing of which he was aware. He argues, however, that he was not told of the amount of court costs to be imposed at his hearing and, in fact, those costs were not calculated until seventeen days after his sentencing hearing. Plaintiff Montanez claims that he did not become aware of the amount of costs until June of 2003, after he filed a motion requesting a copy of the sentencing commitment order. (As an aside, plaintiff Montanez challenges the usage of the DC-300B form because it is not signed by a judge and, in his opinion, carries no force of law. However, the Pennsylvania courts have held that prison officials can rely on the DC-300B form to record and make Act 84 deductions. See e.g., Boyd v. Commonwealth, 831 A.2d 779, 783 n.6 (Pa.Cmwlth. 2003)). To the extent that plaintiff Montanez claims that he did not have an opportunity to challenge the total amount of court costs which he was required to pay, challenges to the assessment of court costs are properly brought before the sentencing court. Herrschaft v. Department of Corrections,

(continued...)

would not necessarily invalidate their convictions. As such, the defendants' argument with respect to the applicability of Heck is misplaced. The defendants' motion for summary judgment should be denied on this basis.

Next, the defendants argue that they are entitled to qualified immunity with respect to the plaintiffs' claims[34]. The defendants argue here that, even if the plaintiff's due process rights were violated, based upon the law as it existed, the defendants would have had no reason to believe that their conduct in collecting the court ordered debts of the plaintiffs through Act 84 and DC-ADM 005 was in violation of the plaintiffs' constitutional rights. Plaintiff Hale argues that the rights at issue were clearly established and that it is well-settled that the deprivation in this case required notice and a hearing prior to the deduction of monies from the plaintiffs' accounts. By way of the posture of the instant action and the discussion herein, it is abundantly clear that the law is not clearly established with respect to the procedural due

---

[33](...continued)
949 A.2d 976 (Pa.Cmwlth. 2008) (citing Commonwealth v. Williams, 909 A.2d 419 (Pa.Cmwlth. 2006) (stating that a challenge to an assessment of costs by the clerk of courts is properly brought in the sentencing court)). Thus, although plaintiff Montanez indicates otherwise, to the extent that he is attempting to litigate this issue, it would not properly be before this court and would be barred by Heck.

[34]Defendants' claim of qualified immunity would apply only to the monetary damages sought in the instant action. N.N. v. Tunkhannock Area School Dist., 801 F.Supp.2d 312, 317 (M.D.Pa. 2011) (Caputo, J.) (qualified immunity only applies when monetary damages are sought and is inapplicable when equitable or injunctive remedies are at issue).

process requirements for deductions made pursuant to Act 84 and DC-ADM 005.

In response to the defendants' claim of qualified immunity, plaintiff Montanez argues that §9730 and Pa.R.Crim.P. 706, which provide for the court to make a determination as to a defendant's ability to pay, were both in existence when Act 84 was passed. Plaintiff Montanez argues that nothing in Act 84 makes exception to the foregoing provisions or provides that an ability to pay hearing should not be provided to an incarcerated individual.

In considering the parties' arguments, qualified immunity shields government officials from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pennsylvania Care, L.L.C. v. Borough, 2011 WL 1135008, *5 (M.D.Pa.) (Caputo, J.) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity analysis requires the court to consider whether the official's acts violated a constitutional or statutory right and, if so, whether that right was clearly established at the time of the violation. Id. (citing Yarris v. County of Del., 465 F.3d 129, 140-41 (3d Cir. 2006)). The court has discretion in deciding which of the two parts of the qualified immunity analysis should be addressed first. Id. (quoting Pearson v. Callahan, 555 U.S. 223 (2009)). With respect to the second step of the analysis, "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right'." Id. (quoting Hope

v. Pelzer, 536 U.S. 730, 739 (2002) (internal citation omitted)).

Here, in considering the second step of the qualified immunity analysis, the court finds that it would not have been clear to the defendants that the DOC was not authorized to deduct monies from inmate accounts without affording them some additional pre-deprivation notice and hearing over and above what was provided by Act 84 and at their respective sentencing hearings. As one court has stated: "It makes no more sense to this Court that DOC would have to provide Plaintiff a pre-deprivation hearing before taking away his liberty by locking him up in a state prison, which had been ordered by the judgment of conviction, than DOC would have to provide him a pre-deprivation hearing before taking away his property by deducting money from his prison inmate account, which had effectively been ordered by the judgment of conviction when considered in conjunction with state law, i.e., Act 84." Houseknecht v. Gettins, 2009 WL 113273, at *17 (W.D.Pa.).

Moreover, qualified immunity would protect the defendants unless their error was clearly unreasonable. Carswell v. Borough of Homestead, 381 F.3d 325, 342 (3d Cir. 2004) (the inquiry is "whether the officer made a reasonable mistake as to what the law requires."). Given this, even where an official's conduct violates a plaintiff's rights, the official is entitled to qualified immunity if the conduct resulted from a mistake in judgment. Hunter v. Bryant, 502 U.S. 224, 228-29 (1991).

Thus, to the extent the plaintiffs are seeking monetary damages, the defendants' motion for summary judgment should be granted with respect to

their claim of entitlement to qualified immunity.

As a final matter, plaintiff Montanez has filed a *pro se* motion for injunctive relief in which he requests that this court enter an order directing the Clerk of Court and his court appointed counsel to provide him with copies of every document filed on the record in this case. In his motion, plaintiff Montanez claims that the Clerk of Court forwarded documents relating to his *pro se* filings to his attorney instead of directly to him. He further claims that his attorney has not forwarded to him copies of requested orders and has not timely or effectively communicated with him regarding matters related to his case.

A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits. Bey v. Pennsylvania Bd. of Probation and Parole, 2012 WL 1123893 (M.D.Pa.) (Caputo, J.) (citing Acierno v. New Castle Cnty., 40 F.3d 645, 647 (3d Cir. 1994)). "A preliminary injunction is an extraordinary remedy that is never awarded as of right." Id. (quoting Winter v. Natural Res. Def. Council, 555 U.S. 7, 22, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008); Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004)). The moving party bears the burden of establishing that the requested injunctive relief is warranted. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989).

In considering plaintiff Montanez's motion, the court initially notes, as it has in the past, that the plaintiff is represented by counsel of record. As such,

the Clerk of Court is not obligated to send documents entered on the record to the plaintiff directly, but only to his counsel of record.

Moreover, plaintiff Montanez has previously and unsuccessfully challenged his counsel's representation. (See Doc. No. 139, Doc. No. 140, Doc. No. 142, Doc. No. 155). While doing so, he has never 'clearly and unequivocally' invoked his statutory right to proceed *pro se*[35] and has, instead, opted to allow counsel to continue to represent him in this matter. Upon review of the record, counsel has been diligent in his efforts to do so. Even with this, plaintiff has been afforded significant leeway in supplementing his counsel's filings where he deems necessary.

In light of the above, plaintiff Montanez has not met his burden of establishing that he is entitled to injunctive relief in the nature requested. As such, his *pro se* motion for injunctive relief, (Doc. No. 238), should be denied.

## IV.   CONCLUSION

On the basis of the foregoing, **IT IS RECOMMENDED** that:

**(1)**   With respect to plaintiff Montanez, the defendants' motion for summary judgment, **(Doc. No. 194)**,

    **(a)**   be **GRANTED** to the extent that it is argued that plaintiff Montanez's claims are barred by the applicable statute of limitations;

    **(b)**   in the alternative, if the recommendation of dismissal based

---

[35]See 28 U.S.C. §1654.

upon the Statute of Limitations is not adopted, as to plaintiff Montanez, the defendants' motion for summary judgment should be **DENIED** on the procedural due process claim as there is a material issue of fact as to whether plaintiff Montanez received adequate notice of DC-ADM 005 allowing for the deduction of monies from his account pursuant to Act 84; otherwise, as to the second part of the due process analysis, the court finds that the post-deprivation remedies available to plaintiff Montanez were adequate to satisfy the requirements of procedural due process;

**(2)** With respect to plaintiff Hale, the defendants' motion for summary judgment, **(Doc. No. 194)**,

  **(a)** be **GRANTED** on the procedural due process claim;

  **(b)** be **DENIED** with respect to their argument that the plaintiffs' claims are barred by the <u>Heck</u> doctrine;

**(3)** To the extent that the plaintiffs Montanez and Hale seek monetary damages, the defendants' motion for summary judgment be **GRANTED** on the basis that the defendants are entitled to qualified immunity on the procedural due process claim.

**(4)** Plaintiff Hale's motion for summary judgment, **(Doc. No. 199)**, be **DENIED**, as the court finds that he received adequate notice of the provisions of Act 84 and DC-ADM 005 and that the post-

deprivation process was adequate to satisfy the requirements of procedural due process;

**(5)**   Plaintiff Montanez's motion for summary judgment, **(Doc. No. 200)**, be **DENIED** to the extent that there is a question of fact as to whether plaintiff Montanez received adequate notice of DC-ADM 005 allowing for the deduction of monies from his account pursuant to Act 84; otherwise, as to the second part of the due process analysis, the court finds that the post-deprivation remedies available to the plaintiff's were adequate to satisfy the requirements of procedural due process; and

**(6)**   Plaintiff Montanez's motion for injunctive relief, **(Doc. No. 238)**, be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:  August 10, 2012**

O:\shared\REPORTS\2004 Reports\04-2569.03.wpd